**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Marissa Tonge Landrón, et al**, | |
| Plaintiffs, | |
| v. | |
| **Doctors Center Hospital San Juan, Inc., et al**, | **CIVIL NO. 19-1061 (DRD)** |
| Defendant - Third Party Plaintiff, | |
| v. | |
| **Galope Anesthesia Services, et al.**, | |
| Third Party Defendants. | |

**OPINION AND ORDER**

Pending before the Court are three *Motions to Dismiss* filed by Third Party Defendants Galope Anesthesia Services, PSC ("Galope"), Dr. Jorge L. López ("Dr. López"), Dr. Ricardo Galán Vázquez ("Dr. Galán") and Continental Casualty Company ("CCC"). *See* Dockets No. 82, 94 and 155. In essence, the three Third Party Defendants request the Court to dismiss the *Amended Third-Party Complaint* filed by Doctors' Center Hospital San Juan, Inc. ("Doctors' Center") against them. Although all *Motions to Dismiss* share common legal theories, the Court will discuss them -as well as Third Party Plaintiff's counter arguments- individually to examine their particularities.

### I.    Relevant Procedural Background

The instant case commenced on January 21, 2019 with the filing of a *Complaint* filed by Ms. Marissa Tonge- Landrón and her two youngest daughters, Mrs. Marissa García-Tonge and Mrs. Barbara García-Tonge (jointly "Plaintiffs"). *See* Docket No. 1. Through said *Complaint*

Plaintiffs requested damages from Doctors' Center -and other Codefendants- for alleged "negligence in the medical treatment of Plaintiff Marissa Tongue Landron". *Id.* at 1. Specifically, Plaintiffs alleged that on May 25, 2017 Ms. Tongue-Landrón entered Doctors' Center to undergo a cervical surgery procedure. After undergoing said surgery, Ms. Tongue-Landrón faced serious complications which led to oxygen depravation and eventual brain damage that left her in a 'semi-vegetative state". *See* Docket No. 1 at 3-7; *see*, *also*, Docket No. 30 at 4-8. Based on said factual allegations, Plaintiffs asserted two cases of action; that is: (1) medical malpractice under Articles 1802 and 1803 of Puerto Rico's Civil Code and (2) hospital liability for negligent understaffing. *Id.* at 7-8.

The day of the filing of the *Complaint*, Plaintiff Ms. Tonge-Landrón -unfortunately- passed away. *See* Docket No. 9. Consequently, remaining Plaintiffs requested the Court leave to amend the *Complaint* and substitute Mrs. Tongue-Landrón. *See* Docket No. 27. After the Court granted the requested leave, Plaintiffs filed an *Amended Complaint* on May 16, 2019. *See* Docket No. 30. The Court notes that said amendments were limited to substituting Mrs. Tongue-Landrón for the estate and adjusting certain details pertaining to Plaintiffs factual allegations. Consequently, the *Amended Complaint* did not include new causes of action under Puerto Rico or Federal law.

On November 2019, Doctors' Center filed a *Third-Party Complaint*. *See* Docket No. 57. Doctors' Center eventually filed an *Amended Third Party Complaint* in order to include Dr. Jorge L. López and his insurer as Third-Party Defendants. *See* Docket No. 70. Doctors' Center contended that Third-Party Defendants are "potentially liable to DCSJ for all or part of the claims asserted by Plaintiffs against Third Party Plaintiff DCHSJ in the captioned case." *Id.* at 1-2. Essentially, Doctors' Center contends that Third-Party Defendants provided anesthesia services to the Hospital and, pursuant to Plaintiffs allegations and the information uncovered through medical experts,

"personnel from the Anesthesia Department contributed in full or in part to plaintiffs' damages". *Id*. at 6. Consequently, as to CCC, "it is alleged that said insurer is included as a third-party defendant to provide coverage to its insureds in the event it is determined that they incurred in negligent acts covered by their respective insurance policies". Docket No. 109 at 5.

## II.   The Motions to Dismiss

### A.   CCC's *Motion to Dismiss*

CCC filed a *Motion to Dismiss* Doctors' Center's *Amended Third-Party Complaint*. *See* Docket No. 82. CCC argues that Doctors' Center's claims should be dismissed under Rule 12 (b) (6) of the Federal Rules of Civil Procedure on various grounds. First, CCC contends that Doctors' Center "failed to allege which substantive right is the basis for its claim against CCC". *Id*. at 8. Second, CCC avers that Doctors' Center "lacks a substantive right to file a third party claim against CCC". *Id*. CCC highlights that Doctors' Center bases its third-party claims "against the alleged insured physician and Galope Anesthesia on its right of contribution under Puerto Rico tort law". *Id*. at 8. However, CCC reasons that said purported "right of contribution" is inapposite. To that end, CCC argues that under Puerto Rico insurance law, there is no "solidarity" between the insurer and the insured, unless it is expressly provided in the insurance contract. By attaching the insurance contract executed between CCC and Third-Party Codefendants, CCC affirms that "solidarity" was not agreed upon the parties.

Third, CCC states that "there is no contract of indemnity between CCC and Doctors Center upon which any remedy can be obtained from CCC" and that, pursuant to Puerto Rico's Insurance Code, "it is only the insured who has a right to claim coverage under the insurance contract against the insurer". *Id.* at 10-11. Consequently, CCC contends that Doctors' Center does not have a direct action against them under Puerto Rico insurance, tort or contracts law.

Fourth, CCC assert that Doctors' Centers' claims against CCC are time-barred by Puerto Rico Civil Code's torts statute of limitations. *Id*. at 12.[1] Specifically, CCC reasons that "the 1 year statute of limitations against the insured parties and CCC as the insurer carrier began to run on the date of the injury[,] May 26, 2017". *Id*. at 13. Consequently, CCC concludes that Plaintiffs' *Complaint* "was filed beyond the 1 year period, plaintiffs had a burden to establish that the statute of limitations was tolled or allege lack of knowledge and specific efforts conducted to acquire the knowledge to file the claim". *Id*. at 14.

In response, Doctors' Center essentially argues that it has "sufficiently alleged a direct line of liability between itself and Dr. Galán and/or Galope, based upon the substantive right of contribution between joint tortfeasors". Docket No. 109 at 8. Specifically, Doctors' Center contends that "[b]y the virtue of the policy issued by CCC [as] to Dr. Galán and Galope, said insurer is contractually obligated to provide defense to said insureds, and also to pay for any damages that its insureds become legally obligated to pay within the policy's limits […][a]s such, CCC is included by virtue of the contractual agreement with its' insureds for the provisions of defense and indemnity". *Id*. at 10.

On the other hand, as to CCC's tolling argument, Doctors' Center contends that these allegations "ingnore[s] a pivotal factual event, namely, the death of patient Marissa Tonge […] on January 21, 2019. […] Tonge's death on January 21, 2019, resulted in the filing of an amended complaint on May 16, 2019, and also transformed the nature of the cause of action from a straight medical malpractice case, to a claim for wrongful death". *Id*. at 2. "Consequently, since the third-

---

[1] CCC highlighted that the Puerto Rico's Supreme Court determined that "when a claim against the insured is time-barred, so is the action against the insurer carried, except when the plaintiff tolled the action against the insurer". *See* Docket No. 82 at 12; *see*, *also*, Durán Cepeda v. Morales Lebrón, 12 P.R. Offic. Trans. 776, 112 D.P.R. 623 (1982). Finally, CCC accentuates that it was not included in Plaintiffs' *Complaint*, *Amended Complaint* and that neither Plaintiffs' nor Third-Party Plaintiffs made any allegations as to the tolling of the statute of limitations.

party complaint was filed on November 7, 2019, a mere ten months after Tonge's demise, the same is timely and within the applicable one-year statute of limitations". *Id*. "The inclusion of the wrongful death claim gave rise to a new limitations clock on Plaintiffs' wrongful-death action, which began to run on the date of the injury, that is on January 21, 2019, which is the date of Tonge's death". Id. at 15.  In its *Reply*, as to this matter, CCC argued that "[i]t is clear from the Motion for Leave to Amend that the purpose of the amendment was not to include a new cause of action of wrongful death, but rather to substitute the deceased Tonge Landrón and include all members of the Estate […] the Amended Complaint did not include any allegations and facts to establish a wrongful death claim". Docket No. 113 at 8.

### B. Galope Anesthesia Services, PSC and Dr. Ricardo Galán-Vázquez's *Motion to Dismiss*

On the other hand, Galope and Dr. Galán filed their own *Motion to Dismiss* as to Doctors' Center's *Third-Party Complaint*. *See* Docket No. 94. The referenced Third-Party Defendants essentially based their request for dismissal on two arguments: (1) Third-Party Plaintiff failed to satisfy the necessary pleading standard under Rule 12 (b) (6) and (2) that Doctors' Center's claims were filed past the applicable 1-year statute of limitations. *Id*. at 9-13.

In its response, Doctors' Center alleges that the allegations contained in the *Third-Party Complaint* and *Amended Third-Party Complaint* "serve as the factual and legal predicates for Doctors' claims that Galope and Dr. Galán are potential joint tortfeasors which caused and/or contributed to Plaintiffs' damages and are responsible to Doctors for any damages if may be required to pay". Docket No. 110 at 7.[2] Regarding the Third-Party Defendants' second argument,

---

[2] As to the referenced allegations, Doctors' Center highlighted the following:

Doctors'' third party complaint asserts that Galope and/or Dr. Galán, provided and/or were in charge of the anesthesia services at Doctors; that said services were provided pursuant to a contractual agreement with Doctors; and/or that the third party defendants were involved in the alleged medical negligence in the provision of said anesthesia services, caused and/or contributed to the injuries

Doctors' Center proffered the same reasoning it provided in opposition to CCC's *Motion to Dismiss*; that is, that Ms. Tonge-Landrón's death "transformed the nature of the cause of action from a straight medical malpractice case, to a claim from wrongful death." Docket No. 110 at 2.

### C. Dr. López's *Motion to Dismiss*

As the other Third-Party Codefendants, Dr. López avers that the cause of action set forth in the *Amended Third-Party Complaint* is time-barred and should be dismissed". Docket No. 155 at 2. Specifically, Dr. López contends that, since May 28, 2017, Plaintiffs new that they had a cause of action and needed to exercise their rights on or before May 28, 2018. Following said reasoning. Dr. López notes that he "was not included in the [P]laintiff's original complaint nor amended complaint, nor was the prescriptive period interrupted against him, any claims against him expired by the time [Doctors' Center] filed their third-party complaint". *Id*. at 8.

In response, Third-Party Plaintiff avers the same theory averred against the other Third-Party Defendant's; that is, Dr. López "ignores the effect of patient Marissa Tonge's death on January 21, 2019, on the statute of limitations applicable to wrongful death and derivative claims. (D.E. 9-1). More specifically, Tonge's death on January 21, 2019, resulted in the filing of an amended complaint on May 16, 2019, and also transformed the nature of the cause of action from a garden variety medical malpractice case, to a claim for wrongful death." Docket No. 174 at 2.

---

claimed in the principal complaint. (D.E. 70). The third-party complaint sets forth the specific deviations from the standard of care that are asserted and attributable to the Anesthesia Department, namely, 1) the failure by the nurse anesthetists to promptly respond to the code; and 2) the anesthesiologists to keep Tonge intubated after the surgery (D.R. 70). Furthermore, the allegations of the third party complaint state that the Professional service Agreement between Doctors and Dr. Galán established the following; that Dr. Galán had the exclusive right to provide anesthesia services; that he retained the nurse anesthetist are his own cost; and that he was responsible for the overall supervision of all anesthesia services, including the anesthesiologists. (D.R. 70)". Docket No. 110 at 6-7.

Finally, Dr. López filed a *Reply* where he countered Third-Party Plaintiff's arguments in response. *See* Docket No. 180.

### III.   <u>Standard of Review</u>

#### A. <u>Standards under Rule 16 (b) (6)</u>

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see, e.g.,* <u>Ashcroft v. Iqbal</u>, 556 U.S. at 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. at 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* <u>Iqbal</u>, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. <u>Iqbal</u>, *supra*, at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked

assertion[s]' devoid of 'further factual enhancement.'" <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009) (*quoting* <u>Iqbal</u>, *supra*, at 678) (*quoting* <u>Twombly</u>, *supra*, at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." <u>Iqbal</u>, *supra*, at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." <u>Iqbal</u>, *supra*, at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (*citing* <u>Twombly</u>, *supra*, at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." <u>Ocasio-Hernandez</u>, 640 F.3d at 12, (*citing* <u>Iqbal</u>, *supra*, at 679); <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. <u>Sepúlveda-Villarini v. Dep't of Educ. of P.R.</u>, 628 F.3d 25, 30 (1st Cir. 2010) (*citing* <u>Twombly</u>, *supra*, at 556); <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (*citing* <u>Twombly</u>, *supra*, at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"); *see*,

*also*, Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, *supra*, at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *See* Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see* Iqbal, *supra*, at 681 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *See* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *See* García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard

prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

Finally, the Court notes that "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under [Rule 12(b)(6)], provided that 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'" Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir.2008) (*quoting* Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir.2001)). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Id.* (citation and internal quotation marks omitted). *See*, *also*, Concepcion-Torres v. Puerto Rico, 45 F. Supp. 3d 170, 172 (D.P.R. 2014).

**B. Standards in the Context of Third Party Practice**

Rule 14 (a) of the Federal Rules of Civil Procedure allows a defending party, as a third-party plaintiff, to cause a summons to be served upon a person not a party to the action "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a).[3] To that end, said Rule allows a defending party to join a third-party defendant "for the purpose of deflecting to that absentee all or part of its potential liability to the plaintiff on the underlying claim." *See* 3 Moore's Federal Practice § 14.02, p. 14-10; *see*, *also*, Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir.1999) (Rule 14 (a)

---

[3] Third-party practice under said Rule is also referred to as "impleader". *See* 3 MOORE'S FEDERAL PRACTICE, § 14.02, p. 14-9.

"contemplat[es] the availability of third-party practice when a non-party is or may be liable for all or part of the plaintiff's claim against the defendant.") (internal quotation marks omitted).

"From the clear language of this rule it follows that a third-party plaintiff is procedurally obliged to predicate its claims upon secondary or derivative liability." Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico, 828 F. Supp. 2d 462, 468 (D.P.R. 2011).[4] To that end, "[a]lmost always, this deflection will be based on an assertion that the absentee owes the defending party a duty of contribution or indemnity." Bernardi Ortiz v. Cybex Int'l, Inc., 345 F. Supp. 3d 107, 117–18 (D.P.R. 2018); see, also, López de Robinson v. United States, 162 F.R.D. 256, 258 (D.P.R.1995) ("A contractual right of indemnification, or a[ ] right [to] contribution between joint tortfeasors are [...] rights under substantive law which allow a[ ]third-party plaintiff to pass along all or a portion of his liability to third-party defendant."). Pursuant to the above, "[a] third-party plaintiff must allege a direct line of liability between itself and the third-party defendant independent of that between the original plaintiff and defendant." Arroyo López v. Hosp. Dr. Dominguez, Inc., 262 F.R.D. 93, 95 (D.P.R. 2009); see, also, Afunday Charters, Inc. v. Spencer Yachts Inc., No. CV 16-3141 (GAG), 2018 WL 10878066, at *3 (D.P.R. Dec. 18, 2018); López de Robinson, supra, at 258.[5]

On the other hand, Rule 14 (a)(4) permits "[a]ny party to move to strike the third-party claim, to sever it, or to try it separately." Fed.R.Civ.P. 14(a)(4). "Although this rule does not explicitly provide for a motion to dismiss third-party claims, '[t]he federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them.'" Zurich Am.

---

[4] See, also, Afunday Charters, Inc. v. Spencer Yachts Inc., supra, at *3 ("Furthermore, the third-party plaintiff must also avow a claim that is derivative of one of the claims established in the original complaint."); see, also, United States v. Gov't Dev. Bank, 132 F.R.D. 129, 131 (D.P.R. 1990); Metro. Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984) ("Third party claims [are] by definition logically dependent on the resolution of the original suit").

[5] "The mere allegation that the third-party defendant is or may be liable to plaintiff will not sustain the complaint." Zurich Am. Ins., supra, at 468.

Ins. v. Lord Elec. Co. of Puerto Rico, 828 F. Supp. 2d 462, 467 (D.P.R. 2011) (*citing* 6 Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1460 (3d ed.

2011)). When faced with this challenge, "in determining whether a third-party complaint was

properly brought under Rule 14, a court looks to whether the pleadings provide a basis for a third-

party defendant's liability to the defendant/third-party plaintiff." Arroyo López, *supra*, at 95.

Finally, "because Rule 14 is a purely procedural mechanism, the Court turns to the substantive law

of this jurisdiction" to ascertain whether the claims in the instant case are substantiated by Puerto

Rico law. Zurich Am. Ins., *supra*, 469 (D.P.R. 2011).

## IV. <u>Legal Analysis</u>

### A. <u>Third-Party Defendants' Statute of Limitations Contention.</u>

#### i. *Perfect and Imperfect Solidarity under Puerto Rico Law.*

Under Puerto Rico law, obligations are divided between "several obligations" and "joint

obligations". "With several obligations, a debt can be divided up, and each debtor must comply

with his portion independently [...] With joint obligations, each creditor has the right to demand,

and each debtor has the duty to fulfill, the entire obligation owed.*"* Fraguada Bonilla v. Auxilio

Mutuo, 186 P.R. Dec. 375 (2012) (Cert. Translation). The "concept of joint and several liability is

called 'solidarity'". Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular De Puerto Rico y

Del Caribe, 994 F. Supp. 2d 218, 222 (D.P.R. 2014) (*citing* Arroyo v. Hospital La Concepcion, 130

D.P.R. 596, 605 (1992). In the context of extra contractual claims, solidarity exists "when several

people take part or cooperate in causing a wrong." Rodriguez v. Suzuki Motor Corp., 570 F.3d

402, 410 (1st Cir. 2009). Thus, "[p]ursuant to Puerto Rico law, two or more individuals whose

combined negligence causes plaintiff's injuries can be held jointly and severally liable as joint

tortfeasors for plaintiff's damages." López de Robinson v. United States, 162 F.R.D. 256, 259

(D.P.R.1995); *see*, *also*, <u>Morales-Meleco v. United States</u>, No. CIV. 13-1311 SEC, 2014 WL 5817533, at *2 (D.P.R. Nov. 7, 2014) ("[P]uerto Rico is a comparative negligence jurisdiction that imposes joint and several liability on joint tortfeasors").[6]

After the Puerto Rico Supreme Court's decision in *Fraguada Bonilla v. Hospital Auxilio Mutuo,* 186 D.P.R. 365 (2012), Puerto Rico law distinguishes between two types of "solidarity"; that is, "perfect" and "imperfect" solidarity. "Perfect" solidarity exists "between several persons joined by a common interest, which have frequent relations among themselves or know each other." <u>Ramirez-Ortiz</u>, *supra*, at 223 (citations omitted). On the other hand, "imperfect" solidarity exists "when it is established by law between persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic." *Id*.

The Supreme Court of Puerto Rico has further explained that there are primary and secondary effects to solidarity. The primary effects -which apply to both "perfect" and "imperfect" solidarity- deal with "unity of the debt and the plurality of the ties". <u>Fraguada</u>, *supra*, at 380. On the other hand, the secondary effects deal with "the tolling of the statute of limitations, the interruption of the default, and the promise to perform of all the solidary debtors". *Id*. When solidarity is "imperfect", in cases of multiple tortfeasors, "each tortfeasor's liability is independent

---

[6] In this solidarity context, "an aggrieved party may collect the entirety of the damages from one, some, or all of the joint tortfeasors." <u>Zurich Am. Ins.</u>, *supra*, at 469; *see*, *also*, P.R. Laws Ann. tit. 31, § 3108; <u>Mojica-Diaz v. United States</u>, No. CIV. 11-1755 MEL, 2013 WL 1909608, at *2 (D.P.R. May 8, 2013). Consequently, "[w]hen any of the tortfeasors pays the totality of the penalty imposed, the other joint tortfeasors are freed form the obligation before the injured party. Because of this, under notions of equity, we have recognized the contributory action [or, right of contribution] in favor of the tortfeasor who compensated the harmed party in a larger portion than its degree of guilt in the damage. Through this action, the tortfeasor that paid can claim from the other joint tortfeasors the corresponding reimbursement as per their respective percentages of liability". <u>Maldonado Rivera v. Suarez</u>, 195 P.R. Dec. 204 (2016) (Cert. Translation); *see*, *also*, <u>Wojciechowicz v. United States</u>, 474 F.Supp.2d 291, 295 (D.P.R. 2007). Furthermore, it's important to stress that this action has a "subsidiary" or "dependent" character. Consequently, "if the obligation of a joint tortfeasor is extinguished or stops being demandable, said joint tortfeasor is freed and the others could not file a contributory action against it." *Id*.

from the other tortfeasors' liability". *Id.* at 17. Consequently, "[a]lthough each of the co-tortfeasors is responsible for paying the full amount, the secondary effects of traditional solidarity -among which, the tolling of the statute of limitations- do not apply." *Id.* To that end, "**in actions for extra-contractual damages, the wronged party must individually toll the statute of limitations as to each solidary co-tortfeasor**". *Id.* (emphasis ours).

After examining the motion practice related to Third-Party Defendant's *Motion to Dismiss*, the Court notes that said Third-Party Defendants nor Third-Party Plaintiff include an explicit discussion of whether "perfect" or "imperfect" solidarity applies between them. However, the Parties discussion of the applicability of the statute of limitations and the facts of the case, lead the Court to conclude that the issues before the Court must be examined under the "imperfect" solidarity scenario. Consequently, prior to considering Galope and Dr. Galán's argument as to the sufficiency of the pleadings of the *Amended Third-Party Complaint*, the Court must determine whether the Third-Party Plaintiff's claims against Third Party Defendants were brought within the statute of limitations.

> ii. *The Statute of Limitations applicable to torts actions under Puerto Rico law.*

For diversity tort actions, such as the instant case, the statute of limitations is substantive law and Puerto Rico law controls. Hanna v. Plumer, 380 U.S. 460, 471 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Puerto Rico's Civil Code provides that personal injury actions carry a one-year statute of limitations from the moment the aggrieved person has knowledge of the injury. 31 P.R. LAWS § 5298; *see*, *e.g.*, Hernandez Gonzalez v. Manati Med. Ctr., No. CV 16-3120 (RAM), 2020 WL 3547943, at *6 (D.P.R. June 30, 2020); Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir.2009).[7] "'That period ordinarily begins to run at the time that the

---

[7] As to the principles behind the statute of limitations this Court has stated the following:

aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it.'" <u>Rivera v. LifeLink Foundation, Inc.</u>, 208 F.Supp.3d 425, 429 (D.P.R. 2016) (citing <u>Gonzalez Figueroa v. J.C. Penny P.R., Inc.</u>, 586 F.3d 313, 318 (1st Cir. 2009)); *see, also*, <u>López-Rivera v. Hosp. Auxilio Mutuo, Inc.</u>, 290 F. Supp. 3d 137, 143 (D.P.R. 2017) ([t]he clock starts ticking 'when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor.'") (citations omitted).

---

It is well established that one of the principal purposes behind the imposition of a limited, yet reasonable, term within which to assert certain rights is to give stability to the juridical relations between persons. See, *Santiago Rivera v. Rios Alonso,* ⸺ D.P.R. ⸺, 2002 WL 226623 (2002), 2002 J.T.S. 21; *Zambrana Maldonado v. E.L.A.,* 1992 WL 755000, 129 D.P.R. 740, 750–51 (1992); *De Jesus v. Chardon,* 1985 WL 301252, 116 D.P.R. 238, 243 (1985). See also, H.M. Brau del Toro, *supra,* Vol. II, Cap. X; M Albaladejo, *Derecho Civil,* 10th Ed., Barcelona, Bosch, 1989, T. I, Vol. 2, Sec. 107, pp. 493–574; F. Bonet Ramón, *Código Civil Comentado,* Madrid, Ed. Aguilar, 1962, p. 1541; L. Diez Picaso, *La Prescripción en el Código Civil,* Barcelona, Ed. Bosch, 1964, p. 27; F.F. Sánchez Román, Estudios de Derecho Civil, 2da ed., Madrid, Sucs. Rivadeneyra, 1891, T. 3, pp. 262 *et seq.;* F. Puig Peña, *Compendio de Derecho Civil Español,* 3rd rev. ed., Madrid, Eds. Pirámide, 1976, T. I, p. 681 *et seq.;* D. Espín Cánovas, *Manual de Derecho Civil Español,* 6th rev. ed., Madrid, Ed. Rev. Der. Privado, 1977, Vol. 1, pp. 483–84; J. Puig Brutau, *supra,* T. III, Vol. 1, pp. 360 *et seq.;* J. Manresa, *Comentarios al Código Civil Español,* 6th rev. ed., Madrid, Ed. Reus, 1973, T. XII, pp. 1013–1019, 1235–1236; J. Castán, *Derecho civil español, común y foral,* 13th ed., Madrid, Ed. Reus, 1982, T. 1, Vol. 2, p. 962; Op. of March 12, 1958, no. 22, LXV Rev. Gen. Leg. y Jur. 219; Op. of April 21, 1958, no. 119, LXV Rev. Gen. Leg. y Jur. 1303; Op. of January 25, 1962, no. 562, Aranzadi, XXIX Repertorio de Jurisprudencia 348; Op. of December 21, 1974, no. 4936, Aranzadi, XLI Repertorio de Jurisprudencia 3765; Op. of July 9, 1975, no. 2947, Aranzadi, XLII Repertorio de Jurisprudencia 2226; Op. of June 16, 1976, no. 2815, Aranzadi, XLII Repertorio de Jurisprudencia 2226; Op. of June 16, 1976, no. 2815, Aranzadi, XLII Repertorio de Jurisprudencia 2084.

In the case of Article 1802 the applicable term is one year from the time that the victim learned of the existence of the damage and who caused it. See, Article 1868 of the Civil Code, 31 L.P.R.A. § 5298; *Municipio de San Juan v. Bosque Real S.E.,* 2003 WL 945783, ⸺ D.P.R. ⸺ (2003), 2003 J.T.S. 33, p. 636; *Santiago Rivera v. Rios Alonso, supra* at 714–15 (and cases therein cited); *Colon Prieto v. Geigel,* 1984 WL 270950, 115 D.P.R. 232, 243 (1984). The establishment of such a term avoids the indefinite protection of rights not claimed and the surprises generated by the resuscitation of stale claims, namely, the loss of evidence, the difficulty in obtaining witnesses and the loss of memory. Last, but not least, the ultimate reason behind the imposition of a limitations period is that it protects the defendant from being exposed *ad infinitum* to claims. See, *Rivera Castillo v. Municipio of San Juan,* 1992 WL 755604, 130 D.P.R. 683, 694–95 (1992); *Zambrana Maldonado v. E.L.A., supra,* at 750 (citing L. Díez–Picaso, *La Prescripción en el Código Civil,* Barcelona, Ed. Bosch, 1964, Cap. IV(2), p. 40); *Culebra Enterprises Corp. v. E.L.A.,* 127 D.P.R. 943, 950 (1991). See also, *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 42 (1st Cir.1990).

<u>Rivera Concepcion v. Pepsi Cola of Puerto Rico</u>, 288 F. Supp. 2d 167, 174–75 (D.P.R. 2003).

Specifically, the Puerto Rico Supreme Court has recognized "two types of knowledge" that will trigger the commencement of the referenced statute of limitations. *See*, *e.g.*, Marcano Delaney v. Puerto Rico Children's Hosp., 261 F. Supp. 3d 235, 238–39 (D.P.R. 2016) (citations omitted). That is, the statute of limitations will commence its course when plaintiff: (1) has "actual knowledge of both the injury and of the identity of the person who caused it" or (2) "is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action." Alejandro-Ortiz v. Puerto Rico Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014) (citations omitted).

To answer the question of whether the Plaintiff should have known of the injury and its corresponding authors, the Court must examine if Plaintiff knew sufficient facts to establish "reasonable likelihood" of an injury; "legal certainty" is not required. *See*, *e.g.*, Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d 311, 320 (D.P.R. 2003); Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 85 (1st Cir. 1993) (The Court must focus "on whether the plaintiff knew the facts that gave rise to the claim, not their full legal implications."). Once aware of sufficient facts, a Plaintiff must "pursue that claim with reasonable diligence, or risk being held to have relinquished [their] right to pursue it later, after the limitation period has run." Rodriguez-Suris v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997).

On the other hand, as to the diligence that needs to be exercised, a Plaintiff, must "promptly assert their rights" and make "active efforts to seek answers and clarify doubts," instead of merely waiting "for answers to fall from the sky [...] when faced with facts that create a reasonable basis for concern about negligence." Estate of Alicano Ayala, *supra*, at 317.[8] "[I]f the plaintiff's lack of

---

[8] Due diligence "is an objective standard that 'has buried within it a normative question of how much diligence should be expected of a reasonable lay person.'" Estate of Alicano Ayala, *supra*, at 317. (*quoting* Villarini-Garcia, *supra*, at 84). *See*, *also*, Rodriguez-Suris, *supra*, at 14 ("plaintiff's subjective awareness is measured against the level of

awareness is due to his own negligence or carelessness, the statute of limitations will begin on the date the alleged tort occurred. The plaintiff is then presumed to have knowledge of the injury at the time of the tortious act." Morales Figueroa v. Valdes, No. CV 15-1365 (DRD), 2016 WL 1171512, at *4 (D.P.R. Mar. 24, 2016); *see*, *also*, Montañez v. Hospital Metropolitano, 157 D.P.R. 96 (2002).

As previously stated, "[a]lthough each of the co-tortfeasors is responsible for paying the full amount, the secondary effects of traditional solidarity -among which, the tolling of the statute of limitations- do not apply." *Fraguada*, 186 D.P.R. at 381 (2012). Pursuant to said principle, *Fraguada* further held that "in actions for damages [involving imperfect solidarity], the injured party must individually interrupt the prescriptive term with regard to each joint and several co-causer," and "timely filing of a complaint against a supposed co-tortfeasor does not toll the statute of limitations against the rest of the alleged co-tortfeasors." *Id.* at 377. Recently, in Maldonado Rivera v. Suarez, 195 P.R. Dec. 182 (2016) (Cert. Translation), the Supreme Court of Puerto Rico had the opportunity to apply the norm set in *Fraguada* in the context of third-party complaints. Specifically, the Supreme Court addressed the following issues: "[c]ould some alleged joint tortfeasor, who were timely sued, file a third party complaint to include in the suit another alleged joint tortfeasor against whim the cause of action is time barred? Would an action for contribution against the alleged joint tortfeasor who was not sued on time, be proper in these circumstances." Maldonado, *supra*, at 187.

The Supreme Court's ruling in *Maldonado* was quite explicit; in essence, it was held that "if the claim by the injured party against certain joint tortfeasors is prescribed, none of the joint

---

awareness that the plaintiff, having been put on notice as to certain facts and having exercised reasonable care regarding a potential claim, should have acquired.").

tortfeasors sued on time could be brought to the suit to respond to the injured party […] **Likewise, the defendant tortfeasor cannot either, through a third party complaint, file a contingent contributory action, because when the right of the injured party to demand liability was extinguished for that tortfeasor, the obligation ceases for all the other tortfeasors from responding for the damage to the party**". Maldonado, *supra*, at 209 (emphasis ours). Consequently, pursuant to *Maldonado*, the Court must examine Plaintiffs' *Complaint* -and *Amended Complaint*- to ascertain whether Plaintiffs' claims against Third-Party Defendants are prescribed.

Further, the Court notes that neither Plaintiffs' *Complaint* nor *Amended Complaint* included Third-Party Defendants as Defendants to the instant action.[9] Furthermore, pursuant to Plaintiffs' allegations, the Court highlights that that the purported tortious actions that gave rise to their claims occurred between May 25, 2017-May 26, 2017, period when Mrs. Tongue-Landrón underwent a cervical surgery procedure at Doctors' Center. *See* Docket No. 30 ¶ 12-38.

For purposes of this analysis, the Court finds that May 26, 2017 constitutes the starting point to calculate the corresponding 1-year statute of limitations. Taking this date into account, as previously stated, Doctors' Center's original *Third Party Complaint* was filed on November 7, 2019; that is 2 years, 5 months and 12 days after the date of the alleged tortious acts that gave rise to Plaintiffs claims.[10] Consequently, the *Third-Party Complaint* was undoubtedly filed after the 1-years statute of limitations applicable to Plaintiffs' claims.

---

[9] Pending before the Court are a couple of requests for leave to amend the *Amended Complaint* made by Plaintiffs. *See* Docket No. 154 and 168. In the first of said requests, Plaintiffs' attempt to include Third-Party Defendants to their *Amended Complaint*. However, prior to considering said request, the Court finds it necessary to address the present *Motions to Dismiss* since their resolution requires a determination as to whether the applicable statutes of limitations to Plaintiffs' asserted claims have already expired in favor of Third-Party Defendants.

[10] As Third-Party Defendants correctly noted, neither Plaintiffs nor Third-Party Plaintiff alleged that the statute of limitations had been tolled against Galope, Dr. Lopez or Dr. Galán. The only tolling argument present in Plaintiffs pleadings is associated to Doctors' Center; however, since Third-Party Plaintiff has not even argued -let alone

### iii.  *Doctors' Center's Wrongful Death Argument.*

In an attempt to evade the fact that the *Third-Party Complaint* was untimely filed, Third-Party Plaintiff contends that Plaintiffs' *Amended Complaint* included a "wrongful death" claim which would provide the instant case with a new statute of limitation period. Being that the case, Plaintiffs reasons that the *Third-Party Complaint* was timely, since it was filed within 1 year of the unfortunate passing of Mrs. Tongue-Landrón.

The source of law for claims of "wrongful" or "unlawful" death that result from a tortious act is Article 1802 of Puerto Rico's Civil Code. *See* Cintrón Adorno v. Gómez, 147 DPR 576, 587(1999); Correa v. Autoridad de las Fuentes Fluviales, 83 DPR 144, 152 (1961) (*citing* Travieso v. Del Toro y Travieso, 74 DPR 1009 (1953); Hernández v. Fournier, 80 DPR 93, 96 (1957)). Specifically, under said statute, the Supreme Court of Puerto Rico has recognized two distinct causes of action for "wrongful" or "unlawful" death:  "one is the personal action of the original victim of the accident for the damages that the same suffered; and the other, the action which corresponds exclusively and by own right to the deceased's close relatives for the damages the death of their predecessor caused them." Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamon, 728 F. Supp. 2d 14, 19 (D.P.R. 2010). The Court examines each individual scenario.

Regarding to the first scenario, "Puerto Rico law provides that a decedent's claim for tortiously inflicted pain and suffering sustained by the decedent prior to death can be transmitted to her heirs." Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 47 (1st Cir. 2009); *see*, *also*, Morel v. Daimler Chrysler AG, 558 F.Supp.2d 147, 148 (D.P.R.2007) ("The Puerto Rico Supreme Court

---

evidenced- that "perfect" solidarity between Doctors' Center, Galope, Dr. Lopez, Dr. Galán and CCC exists, said tolling is inconsequential as to the interruption of the statute of limitations with regards to Third-Party Defendants.

has generally determined that a civil cause of action to redress bodily injuries or moral suffering sustained prior to death may be transmitted to one's heirs so long as the cause of action is not 'so personalized that it depends on the continued natural life of the deceased.'" (*quoting* Viuda de Delgado*, 101 D.P.R. at 602)). In this context, Article 41 of Puerto Rico's *Code of Civil Procedure* establishes special rules for the application of the general 1-year statute of limitation related to torts actions. To that end, Article 41 states that:

> If a person entitled to bring an action dies before the expiration of the term limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives, after the expiration of that time, and within one year of his death. If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, an action may be commenced against his representatives after the expiration of that time, and within one year after the issuing of letters testamentary or of administration. 32 L.P.R.A. § 255.

That is, should the original injured claimant pass away before the expiration of the statute of limitations, the corresponding action may be initiated by his or her representatives within one year of his or her death.

As previously stated, May 26, 2017 is the date on which the statute of limitations for Plaintiffs' actions commenced for the purposes of this analysis. Mrs. Tongue-Landrón passed away on January 21, 2019; that is, after the statute of limitations passed with regards to Third-Party Defendants. Consequently, the extension to the statute of limitation provided by Article 41 of Puerto Rico's *Code of Civil Procedure* is inapplicable to the first scenario of the possible wrongful death claims as to Third-Party Defendants.

On the other hand, the second scenario of a wrongful death claim under Article 1802 of Puerto Rico's Civil Code recognizes that a close relative may bring his or her own personal claim for the damages that resulted from the wrongful death. In the instant case, the personal claim of Mrs. Tongue-Landron's daughters for the alleged wrongful death had to be filed within 1 year of

her passing; that is, on or before January 21, 2020. <u>Montalvo v. Gonzalez-Amparo</u>, 587 F.3d 43, 47 (1st Cir. 2009) ("such a claim for wrongful death 'arises at the time of death.'")(citing *Arturet–Vélez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 14 (1st Cir.2005)). The *Third-Party Plaintiff* was filed within 1 year of Mrs. Tongue-Landrón's death, however, the Court agrees with Third-Party Defendants in that Plaintiffs did not properly alleged the wrongful death claim in their *Amended Complaint*.

As previously stated, "wrongful" or "unlawful" death claims stem from Article 1802 of Puerto Rico's Civil Code. "Article 1802 provides that '[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.' In order to prevail on this theory, the plaintiff must show '(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause).' <u>Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De Puerto Rico</u>, 671 F.3d 49, 61 (1st Cir. 2012) (internal citations omitted); *see*, *also*, P.R. Laws Ann. tit. 31, § 5141.

The Court finds that Mrs. Tongue-Landrón's daughters did not provide sufficient allegations in their *Amended Complaint* in order to ascertain that damages **under this scenario** of the "wrongful" or "unlawful" death claim.[11] Specifically, the Court finds that Plaintiffs did not alleged in their *Amended Complaint* -nor the corresponding request for leave to amend- that the tortious acts that gave rise to their claims also caused Mrs. Tongue-Landrón's death; that is, there is no allegation as to what was the proximate cause of Mrs. Tongue-Landrón's unfortunate

---

[11] The Court also notes that even the pending request for leave to amend the *Amended Complaint* filed by Plaintiffs do not address this matter either. *See* Docket Nos. 154 and 168.

passing.[12] Even considering Plaintiffs' allegations in light most favorable to them, the Court cannot recognize a claim that is simply not there. Consequently, since no "wrongful" or "unlawful" death claim **under this scenario** was included in the *Amended Complaint*, the statute of limitations for said claim cannot be used by Third-Party Plaintiff to justify their late filing of the *Third-Party Complaint* against Third-Party Defendants.

Consequently, the Court finds that Doctors' Center's *Third-Party Compliant* was untimely filed, pursuant to the Supreme Court's decision in *Maldonado*, as to petitioning Third-Party Defendants. [13]

## V.   Conclusion

Pursuant to the above, Galope, Dr. Galan, Dr. López and CCC's *Motions to Dismiss* are hereby **GRANTED** and, therefore, the *Amended Third-Party Complaint* is dismissed as to the all Third-Party Defendants. Finally, the Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See* Nichols

---

[12] Furthermore, although the Court is not making any factual determinations as to this matter at this juncture, it is telling that Mrs. Tongue-Landrón's Death Certificate provided by Plaintiffs stated that she passed away by "natural" causes. *See* Docket No. 9-1.

[13] Therefore, the Court finds it unnecessary to determine whether the allegations in the *Third-Party Complaint* -and *Amended Third-Party Complaint*- against Galope and Dr. Galan where "sufficient" under Rule 12 (b) (6). However, the Court believes the if the *Third-Party Complaint* would have been timely filed, the allegations contained therein satisfied the pleading standard under Rule 12 (b) (6).

Finally, the Court also finds it unnecessary to examine CCC's arguments as to whether Third-Party Plaintiffs has a substantive right against it. However, as to this matter, the Court notes that the Supreme Court of Puerto Rico has stated that the relationship between an insurer and the insurance carrier is a contractual one and it is ruled by the agreements executed between the parties through the insurance contract. *See*, *e.g.*, Integrand Assurance v. Codeco, 185 DPR 146 (2012); Gen. Accid. Ins. Co. P.R. v. Ramos, 148 DPR 523 (1999). In harmony with said principle, this Court has previously concluded that "[a]n insurer's tort solidarity may not be presumed. Instead, tort solidarity should clearly arise from the insurance contract and the insurer's tort liability will always be limited to what is established in the terms of the agreement." Morales Figueroa v. Valdes, No. CV 15-1365 (DRD), 2016 WL 1171512, at *7 (D.P.R. Mar. 24, 2016). CCC did provide the insurance contract executed between it and petitioning Third-Party Defendants; after examining said contract, the Court finds that no solidarity was agreed. Moreover, Doctors' Center did not allege -and CCC affirmatively denied- that it had any contractual relationship with CCC that would give rise to a contractual right of indemnity. Furthermore, the Court finds that under Article 20.030 of Puerto Rico Insurance Code, Doctors' Center, would not have a claim against CCC as it is not the injured nor the insured. To that end, the Court understands that Doctors' Center does not possess a "direct line of liability" against CCC.

v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 11, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge